IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| TOPLINE SOLUTIONS, INC., | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-09-3102 |
| SANDLER SYSTEMS, INC., | * |
| Defendant. | * |

MEMORANDUM

Topline Solutions, Inc. ("Topline") sued Sandler Systems, Inc. ("SSI") for breach of contract and other claims. Judge Benson Everett Legg granted partial summary judgment and appointed Barry Bondroff as an independent auditor to conduct discovery for the calculation of damages. The parties dispute the construction of one section of the contract, and resolution is necessary for Bondroff to complete his work.

I. Background[1]

A. Factual History

In the 1990s, Steven Kraner, the owner of Topline, and Guru Ganesha Singh Khalsa, owner of Ram Das, Inc.,[2] developed a negotiation program called "Negotiating with the Savvy Buyer." ECF No. 105 at 1. On March 7, 2006, Topline, Ram Das, and SSI

---

[1] The relevant facts are not in dispute.

[2] Ram Das is not a party to this case.

executed a Co-Development Agreement ("CDA") to market and sell an adaptation of Negotiating with the Savvy Buyer called the SSI Negotiation Program through SSI's network of franchises and customers. *Id*; *see* CDA Explanatory Statement H.

Under the CDA, SSI agreed to pay to Topline 20% "of SSI's net receipts, if any, from the sale of the SSI Negotiation Program to the Sandler Franchise Network, including initial and subsequently modified materials." CDA § 7(a). Net receipts included:

> all of SSI's revenues of every kind and character actually collected from the sale of the Program, less all applicable sales and use taxes, gross receipts taxes and similar taxes received by SSI, and by any applicable bona fide refunds, rebates or discounts paid by SSI.

*Id*. SSI agreed to consult with Topline about the amount it would charge franchisees for the SSI Negotiation Program, "but the final determination of the amount shall be in the sole discretion of SSI." *Id*. § 7(c). Finally, "[i]f SSI delivers the SSI Negotiation Program to SSI's in-house clients SSI will pay to [Topline] the same amount as [Topline] would have received as a Royalty if the materials had been purchased by a member of the Sandler Franchise Network." *Id*. § 7(d).

The CDA stated that the SSI Negotiation Program "may be delivered as a one-day program, a two-day program, an advanced program, or an introduction." *Id*. § 5. SSI was permitted to "update the SSI Negotiation Program materials," and "modify the

SSI Negotiation Program materials." *Id.* at § 5(a). Similarly, Topline and Ram Das could "develop additional materials to complement the SSI Negotiation Program and deliver it to SSI for use in the SSI Negotiation Program."

U.S. franchisees purchased the SSI Negotiation Program materials on a per-chapter basis through SSI's "digital library",[3] which was $7 per chapter in 2007, $8 in 2008, and $8.50 thereafter. *See id.* at 20; *Hr'g*. They could also purchase the complete book through the "Warehouse." *Hr'g*. Some international franchisees paid a flat monthly fee for online access to the SSI Negotiation Program materials, rather than by chapter. *Hr'g*.

SSI also provided the SSI Negotiation Program to in-house clients, one of which was Lenovo. From 2006 to 2008, SSI received $2,684,000 for travel, training, and materials for several programs it provided for Lenovo. ECF No. 143-2 at 2. SSI charged Lenovo either $2,400 or $2,600 per day for the trainer, the "product cost" was $125 or $200 per person, and

---

[3] The international franchisees, however, were granted access to an FTP server with unlimited access as part of a monthly fee, rather than buying Negotiation Program materials piecemeal; SSI did not track the international franchisees' usage. ECF No. 105 at 4.

"workbook and tool creation" was either $7,500 or $10,000, depending on the course.[4] ECF No. 143-3 at 5.

B. Procedural History

On November 19, 2009, Topline sued SSI for breach of contract,[5] specific performance, fraud, and a permanent injunction. ECF No. 1. After a hearing, on April 18, 2012, Judge Legg granted partial summary judgment, holding that SSI breached the CDA by:

a. Improperly deducting shipping and printing costs before calculating the royalty under § 7(a);
b. Not accounting for royalty fees for international franchisees;
c. Not making proper royalty statements; and
d. Failing to consult with Topline before setting the price of the Program.

ECF No. 105. SSI may have also breached the CDA by improperly accounting and paying for sales to in-house clients. *Id.* at 3-4. Judge Legg held that an accounting was required to resolve this issue. *Id.* at 4.

On May 22, 2012, Judge Legg appointed Bondroff to provide an independent account of damages, specifically:

---

[4] Topline claims that between 1/5th and 1/6th of SSI's program for Lenovo was the SSI Negotiation Program. ECF No. 143-4 at 19. At the hearing counsel indicated that the SSI Negotiation Program was given as part of "Phase 2" of the Lenovo training; however, there was no evidence to that effect. *Hr'g*. Regardless, the calculation is not currently before the Court.

[5] Topline alleged that SSI breached the CDA and a separate High Tech Boot Camp Agreement. *See* ECF No. 1. The current dispute concerns only the CDA.

4

a. The amount of damages to which Topline is entitled as a result of SSI's deduction of printing and shipping costs from net receipts before calculating royalty payments under § 7(a) of the CDA.
b. Whether royalties due to Topline under § 7(a) and (d) of the CDA in connection with in-house client sales have been properly accounted for and paid; specifically, whether SSI underreported or failed to disclose such sales.
c. A retroactive accounting of royalties owed to Topline on the percentage of international franchise fees attributable to the SSI Negotiation Program.

ECF No. 111 at 2. Judge Legg intended that Bondroff would manage the discovery process for determining damages under the CDA, and the parties could object in writing after he completed a report. ECF No. 128 at 2. On October 25, 2012, the case was reassigned to this Judge.

In January 2013, Bondroff's associate David Landman contacted the Court and indicated that the auditors could not resolve "one" of the three areas on which they were to report and requested a hearing. Landman did not disclose the nature of the problem. On January 15, 2013, the Court informed the parties of the need for a hearing. ECF No. 141. On January 30, 2013, Topline submitted a hearing memorandum. ECF No. 143. On February 13, 2013, SSI responded. ECF No. 148. On February 28, 2013, Topline replied. ECF No. 149.

On March 12, 2013, the Court held a hearing about the dispute. Landman testified about the Lenovo contract, SSI's provision of Negotiation Program materials to U.S. and international franchisees, and his construction of the CDA.

II. Analysis

The central dispute between the parties is the proper method for calculation of in-house use of the SSI Negotiation Program under § 7(d). Topline believes that it is entitled to 20% of "**all** revenues collected by SSI for training done with the negotiation for . . . in-house clients." ECF No. 143 at 2 (emphasis in original). Specifically, it contends that it should receive 20% of the "trainer cost" paid for trainers teaching the materials and the "workbook creation" cost for preparation of the program. *Id.* at 4. SSI asserts that Topline is not entitled to these revenues. *See* ECF No. 148

In support of its position, Topline relies on Judge Legg's statement in his Order granting partial summary judgment that

> [t]here is no current dispute as to how royalties on sales to SSI's in-house clients should be calculated; § 7(a) clearly provides for 20% royalties on "SSI's revenues of every kind and character actually collected from the sale of the Program" less certain costs. Section 7(d) explains the same royalty obligation applies to in-house client sales as it does to sales made to members of the Sandler Franchise Network. Further, SSI acknowledges that the 20% royalty it owes on sales of the complete Negotiation Program also applies to sales of individual chapters. SSI makes chapters available to its in-house clients through the Digital Library and Warehouse.

ECF No. 105 at 3.

Despite Topline's assertions, Judge Legg's order did not address the current dispute. The precise legal question of what is a sale of materials in § 7(d) was not before the Court at the

6

summary judgment stage.[6] Rather, Judge Legg was emphasizing that the 20% royalty provision applied to in-house use through § 7(d).

Central to construction of § 7(d) is the nature of the SSI Negotiation Program. Despite SSI's assertions to the contrary, the SSI Negotiation Program is more than just its written materials. Cf. ECF No. 148 at 8. The CDA refers to the SSI Negotiation Program materials separately from the SSI Negotiation Program itself. It states that the "SSI Negotiation Program may be delivered as a one-day program, a two-day program, an advanced program, or as an introduction." CDA at § 5. SSI may "update the SSI Negotiation Program materials," and "modify the SSI Negotiation Program materials." Id. at § 5(a). Section 7(c) gives the procedure for setting the price for sales of the SSI Negotiation Program without reference to materials. Similarly, § 7(a) defines the royalty based on the sale of the SSI Negotiation Program, "including initial and subsequently modified materials." These all indicate that the SSI Negotiation Program is more than its written materials.

---

[6] Cf. ECF No. 89-1 at 15-24 (Topline's memorandum discussing only calculations of chapters used in-house); ECF No. 92 (SSI's response); cf. also ECF No. 105 at 5 (Order) ("There is no dispute as to how royalties on sales to SSI's in-house clients should be calculated.")

Relying on Explanatory Statement G, SSI asserts that the SSI Negotiation Program is the same as its materials. *See* ECF No. 148 at 8. Explanatory Statement G states that a copy of the Negotiation with the Savvy Buyer program developed by Topline and Ram Das is attached to the CDA. *See* CDA Explanatory Statement G. SSI asserts that this logically limits Negotiation with the Savvy Buyer to only that written material. ECF No. 148 at 8. Explanatory Statement H, however, states that the SSI Negotiation Program is adapted from Negotiation with the Savvy Buyer. *Id.* Explanatory Statement H. Even if Explanatory Statement G limits Negotiating with the Savvy Buyer to solely written materials, that statement is not directly applicable to the SSI Negotiation Program and does not govern its character. The operative sections of the agreement are clear that the SSI Negotiation Program is more than the materials for providing it.

This conception of materials clarifies § 7(d). Under that section, if SSI delivers the SSI Negotiation Program to in-house clients, it must pay Topline "the same *amount* as [Topline] would have received as a royalty if the *materials had been purchased*" by a franchisee. CDA § 7(d) (emphasis added). Because the materials are distinct from the SSI Negotiation Program, the royalty calculation under § 7(d) must rely on an amount for

which SSI would have sold the materials to a franchisee.[7] This use of the materials price for calculation of the royalty necessarily excludes other revenue that SSI may have received from in-house clients, such as payments for trainers.

Accordingly, Topline is incorrect that it is entitled to 20% of SSI's "trainer costs" under § 7(d). It appears that the "workbook creation" cost was an amount that SSI charged for its production of the program. See ECF No. 143-3 at 5; Hr'g. These too are not covered by § 7(d). Topline is entitled only to 20% of what SSI would have charged franchisees for the materials that it used in presenting the SSI Negotiation Program to its in-house clients.[8] The royalty amount does not depend on the actual amounts received by SSI.

---

[7] This is similar to the calculation that must be made for sales of the SSI Negotiation Program to internal franchisees that paid a monthly fee for unlimited access to the materials. See ECF No. 105 at 5.

[8] To the extent that SSI would have charged for the printing and shipping of materials, that is subject to the royalty payment pursuant to Judge Legg's Order. See ECF No. 105 at 2.

III. Conclusion

For the reasons stated above, § 7(d) of the CDA requires calculation of the amount that SSI would have received if it had sold to a franchisee the materials used for in-house provision of the SSI Negotiation Program. Topline is entitled to a royalty of 20% of that amount.

Date 5/13/13

William D. Quarles, Jr.
United States District Judge