IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
TOPLINE SOLUTIONS, INC.,
                              *
          Plaintiff,
                              *
          v.                          CIVIL NO.: WDQ-09-3102
                              *
SANDLER SYSTEMS, INC.,
                              *
          Defendant.
                              *
*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Topline Solutions, Inc. ("Topline") sued Sandler Systems, Inc. ("SSI") for breach of contract and other claims. ECF No. 1. Pending are Topline's Objections to Magistrate Judge J. Mark Coulson's Order Denying Further Discovery, ECF No. 178, and SSI's Motions for Bifurcation and an Extension of Time, ECF No. 185. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, Topline's Objections to Judge Coulson's August 28, 2014 Order will be sustained in part and overruled in part, SSI's motion to bifurcate HTBCA liability and damages and for an extension of time will be denied, and the Court will defer ruling on bifurcating the CDA and HTBCA claims pending additional briefing.

I.   Background[1]

On November 8, 2005, Topline, SSI, and Ram Das, Inc. ("Ram Das")[2] executed the "High Tech Boot Camp Agreement," or "HTBCA." ECF No. 106 at 1.  The HTBCA states that SSI will "exclusively produce the HTBC Program Materials solely for [Ram Das] and Topline and that [Ram Das] and Topline [will] obtain the HTBC Program Materials solely from SSI."  ECF No. 1 ¶ 45 (alterations omitted)(emphasis omitted).  On March 7, 2006, Topline, Ram Das, and SSI executed a Co-Development Agreement ("CDA") to market and sell an adaptation of a program, called the "SSI Negotiation Program,"[3] through SSI's network of franchises and customers. *Id.*; ECF No. 1 ¶ 22.[4]

On November 19, 2009, Topline sued SSI for breach of the CDA and HTBCA, specific performance, fraud, and a permanent injunction.  ECF No. 1.  The first scheduling order set December

---

[1] The facts and procedural history are from the parties' pleadings and exhibits filed in connection with Topline's Objections and relevant filings in the record.

[2] Ram Das is not a party to this case.

[3] In the 1990s, Steven Kraner, the owner of Topline, and Guru Ganesha Singh Khalsa, owner of Ram Das, developed a negotiation program called "Negotiating with the Savvy Buyer," on which the SSI Negotiation Program had been based.  ECF No. 105 at 1.

[4] In the CDA, the parties waived their right to "punitive damages in any action arising out of [or] related to this Agreement," and to "trial by jury in any action . . . whether at law or at equity, brought by either of them, or in any action . . . which arises out of or is connected in any way with this Agreement." *See* ECF No. 1-1 at 20 (CDA § 17(c)-(d)).

10, 2010 as the discovery deadline.  ECF No. 30.  However, in 2011, Judge Benson Everett Legg--to whom this case was assigned[5]--issued several Orders compelling SSI to produce discovery, *see* ECF Nos. 46, 56, 60, and permitting Topline to depose SSI's "corporate representative to determine the extent to which SSI utilized Topline's proprietary information," ECF No. 76.[6] Thereafter, on September 15, 2011, Judge Legg suspended discovery while dispositive motions were filed and ruled upon. ECF No. 82.

On April 18, 2012, Judge Legg granted Topline partial summary judgment as to the CDA, holding that SSI breached the CDA by: (1) improperly deducting shipping and printing costs before calculating the royalty under § 7(a)of the CDA; (2) not accounting for royalty fees for international franchisees; (3)

---

[5] On May 6, 2010, Judge Peter J. Messite granted SSI's motion to transfer venue to the U.S. District Court for the District of Maryland, Northern Division, where it was assigned to Judge Legg.  ECF Nos. 22, 23.

[6] In July 2011, Judge Legg expressed concern about the number of discovery disputes that had arisen.  *See* ECF No. 76 at 2.  He thus ordered that:

> [t]he parties may not file any further discovery motions unless they certify that they have met and conferred regarding every aspect of the motion, including the information sought, the legal authorities that compel production, and whether there is a practical solution available that could reduce the time and resources expended by all on these matters.

*Id.*

3

not making proper royalty statements; and (4) failing to consult with Topline before setting the price of the Program.  ECF No. 105.  SSI may have also breached the CDA by improperly accounting and paying for sales to in-house clients.  *Id.* at 3-4.  Judge Legg held that an accounting was required to determine damages.  *Id.* at 4.

As to the HTBCA, on April 30, 2012, Judge Legg denied the parties' cross-motions for summary judgment, finding that the HTBCA was ambiguous and that a trial was necessary to resolve factual disputes.  ECF No. 106 at 3-4.

On May 22, 2012, under Fed. R. Evid. 706,[7] Judge Legg appointed Barry Bondroff, C.P.A., from Gorfine, Schiller & Gardyn, P.A. ("GSG"),[8] to provide an independent account of damages from SSI's breach of the CDA.  ECF No. 111. Judge Legg ordered Bondroff to

submit a report and testify at trial on . . . :

a. The amount of damages to which Topline is entitled as a result of SSI's deduction of printing and shipping costs from net receipts before calculating royalty payments under § 7(a) of the CDA.

---

[7] Rule 706 provides for the appointment of court-appointed experts.  *See* Fed. R. Evid. 706(a).  "The expert: (1) must advise the parties of any findings the expert makes;(2) may be deposed by any party; (3) may be called to testify by the court or any party; and (4) may be cross-examined by any party, including the party that called the expert."  Fed. R. Evid. 706(b).

[8] David A. Landman, C.P.A., C.F.E., also with GSG, assisted Bondroff with the accounting.  ECF No. 152 at 19.

b. Whether royalties due to Topline under § 7(a) and (d)
   of the CDA in connection with in-house client sales
   have been properly accounted for and paid;
   specifically, whether SSI underreported or failed to
   disclose such sales.
c. A retroactive accounting of royalties owed to Topline
   on the percentage of international franchise fees
   attributable to the SSI Negotiation Program.

*Id.* at 2.

Judge Legg intended that Bondroff would "avoid discovery
disputes, keep costs low, and streamline resolution of the
remaining issues." ECF No. 123 at 1. For that reason, Judge
Legg directed Bondroff to meet with the parties "to develop a
framework for determining the royalties owed to Topline under
the CDA," which would "involve (i) understanding the issues,
(ii) deciding what documents and other information should
reasonably be produced and inspected, and (iii) a reasonable
method for resolving the issues." *Id.* Judge Legg did not
intend that Bondroff would perform a forensic audit. *Id.* The
parties agreed to meet with Bondroff and SSI accounting
personnel on July 24, 2012. ECF No. 122.[9]

---

[9] During a July 25, 2012 conference call, Judge Legg stated that
Bondroff should meet with the parties at SSI to discuss
production. ECF No. 125 at 11 (Transcript of the July 25, 2012
conference call). Judge Legg anticipated that Bondroff would
then work with SSI to produce the information. *See id.* at 6
(suggesting that Bondroff "would sit down in SSI's offices with
SSI's accounting people and management, discuss the issues that
have to be resolved under the [CDA], would talk things out with
SSI and come up with . . . an approach to getting enough books,
records and information to solve these problems"). Topline
expressed concern that Judge Legg's proposal prevented it from

On July 27, 2012, SSI sought clarification about the scope of Bondroff's role. ECF No. 124. SSI noted that--on June 11, 2012--Topline had proposed "Investigative Procedures" for Bondroff to use in his accounting. *Id.* at 2; *see also* ECF Nos. 120, 120-1 (Topline's proposed Schedule A: Investigative Procedures). According to SSI, Topline's Investigative Procedures were more suited to a forensic audit, which Judge Legg had stated Bondroff would not perform. ECF No. 124 at 2-3.

On August 3, 2012, Judge Legg clarified that "Bondroff's first and primary role is to advise the Court as to the appropriate scope of discovery to be conducted in this case." ECF No. 128 at 2. To achieve that goal, Bondroff would "(i) review the opinions, (ii) meet with counsel and the parties, (iii) come to an understanding of SSI's books and records, (iv) decide what information SSI should reasonably be required to produce, (v) set deadlines for production, and (vi) monitor SSI's production." *Id.* The parties could submit written proposals on the scope of discovery to Bondroff --including, for example, Topline's Investigative Procedures--and retain experts

satisfactorily participating in production. *See id.* at 13-14. Judge Legg explained that he intended for Topline to participate "every step of the way." *Id.* at 15. For example, if Topline disputed the amount of SSI's production or the manner in which damages had been estimated, Bondroff would serve as "the referee discovery master" and--after hearing from SSI--decide how best to address Topline's concerns. *Id.* at 15. Topline agreed that Judge Legg's proposal "sound[ed] excellent." *Id.*

to advise them on the accounting. *Id.* Bondroff, however, had discretion to accept or reject the parties' proposals. *Id.* After Bondroff determined that production had been completed, he was to "advise the Court and counsel." *Id.* "Both sides [would] be given an opportunity to state, in writing, whether they [were] satisfied or dissatisfied with the production required by [Bondroff]." *Id.* Thereafter, the Court may "eventually" assign Bondroff the "second task of writing reports and testifying at trial or at hearings." *Id.* at 3.[10]

On October 25, 2012, the case was reassigned to this Judge. On November 16, 2012, the Court approved the parties' consent motion to reopen discovery as to the HTBCA. ECF Nos. 137, 138. Within the consent motion, Topline "reserve[d] the right to seek permission from the court to conduct additional discovery concerning the CDA claims after evaluating the results of the audit currently underway." ECF No. 137 at 2.

On January 14, 2013, Topline served SSI with a Third Set of Document Requests. *See* ECF No. 178 at 12; Pl. Ex. S. On

---

[10] Notwithstanding Judge Legg's Order appointing Bondroff to determine damages, ECF No. 111 at 2, Judge Legg made plain that Bondroff should--at this stage--"determine, from the standpoint of an accounting expert, what documents, accounting records, and other information should be produced to Topline. . . . . The Court hopes that the parties will be able to calculate 'the numbers' themselves after [Bondroff] decides what information reasonably establishes those numbers," ECF No. 128 at 3.

February 14, 2013, SSI responded by objecting to ambiguities in the request. *See* Pl. Ex. T.[11]

On March 12, 2013, this Court held a hearing on the proper construction of a disputed CDA section that Bondroff needed to complete his work. ECF No. 150.[12]

On August 9, 2013, Bondroff issued a report, titled "Analysis of Negotiation Sales and Royalties" (the "Report") covering January 1, 2006 to March 31, 2012. ECF No. 152. Bondroff found that SSI owed Topline $15,612.84 in additional royalties, and suggested a metric for determining damages from international franchisees' distribution of the SSI Negotiation Program. *Id*. at 4.

On August 22, 2013, the parties jointly declined scheduling a settlement conference "until the parties have had an opportunity to respond to Mr. Bondroff's report and Judge Quarles has resolved any dispute that might exist." ECF No. 154 at 1.

---

[11] In November 2013, Topline wrote to SSI in an attempt to "meet and confer" about the Third Set of Document Requests. *See* ECF No. 181-1. Topline demanded that SSI withdraw its objections and produce the documents. *Id*. at 4. In December 2013, SSI responded by stating that its objections were valid. ECF No. 181-2 at 2.

[12] The parties had disputed the proper method for calculating in-house use of the SSI Negotiation Program under CDA § 7(d). ECF No. 151 at 6. The Court held that CDA § 7(d) entitled Topline to 20% of the amount "SSI would have received if it had sold to a franchisee the materials used for in-house provision of the SSI Negotiation Program." *Id*. at 10.

On August 26, 2013, Topline asked Bondroff to provide copies of the documents used to prepare the Report.  ECF No. 175 at 2.  After SSI objected, Topline served Bondroff with a subpoena *duces tecum*.  *Id*.

On September 10, 2013, the parties jointly requested a conference with this Court to "resolve differences between counsel as to what, if any, additional discovery [Topline] is entitled concerning the CDA and specifically as to Mr. Bondroff's report."  ECF No. 155 at 1.

On October 1, 2013, the Court held a telephone conference with the parties.  *See* Docket.  Per the Court's records, during the call Topline stated that it was unable to determine whether it was satisfied with Bondroff's Report and underlying discovery until it obtains that discovery.  That day, the Court ordered the parties to serve discovery requests on Bondroff, and propose a scheduling order, by October 11, 2013.  ECF No. 156.  On October 15, 2013, the Court approved a joint proposed scheduling order setting deadlines for requesting documents from, and deposing, Bondroff, and filing exceptions to his Report.  ECF No. 158.

On October 28, 2013, SSI moved for a protective order to limit Topline's discovery of Bondroff's information.  ECF No. 159.  Topline had sought to depose Bondroff and Landman, and requested "virtually every piece of data in SSI's records

reviewed by the [Bondroff and Landman] to produce [the Report]."
*Id.* at 1-2.  On December 12, 2013, the Court granted the
parties' joint motion to suspend the scheduling order pending
resolution of SSI's motion.  ECF No. 163.

On January 24, 2014, Magistrate Judge Susan K. Gauvey--to
whom discovery had been referred--denied SSI's motion for a
protective order.  ECF No. 165.  Judge Gauvey found that

> the data reviewed by GSG in formulating its report is
> relevant and should be produced to plaintiff. . . .
> [T]he fact that Judge Legg appointed GSG to streamline
> proceedings does not serve to deprive plaintiff of the
> opportunity to fully depose GSG and probe the basis of
> their report. The appointment of a single, independent
> court expert did avoid engagement of two experts, two
> sets of document production, two depositions, disputes
> over what data the expert needed, etc. But, in no case
> can the plaintiff be deprived of the right to
> understand and challenge, the damages determination.
> It makes no difference whether the expert is court-
> appointed or retained by one of the parties. As such,
> the Court finds that plaintiff's requests are proper.

*Id.* at 6.  In February 2014, Bondroff produced four gigabytes of
information in 1,776 files.  ECF No. 178 at 13, 20.

According to Topline, its February 2014 discussions with
SSI "made it clear that many of SSI's objections to Topline's
[HTBCA-related] third set of document requests might be resolved
once the material produced by [Bondroff] had been fully

reviewed." ECF No. 178 at 13-14. On February 14, 2014, SSI agreed to provide additional discovery. *See* Pl. Ex. U.[13]

On February 21, 2014, the Court approved the parties' joint proposed scheduling order, which set April 18, 2014, as the deadline for filing exceptions to the Report. ECF No. 168.

On April 3, 2014, the Court approved the parties' amended joint proposed scheduling order, which extended the deadline for filing exceptions to the Report to June 6, 2014, and the fact discovery deadline to September 5, 2014. ECF No. 170.

On May 5, 2014, SSI asked Topline what additional HTBCA-related discovery it may seek. ECF No. 178 at 15. Topline responded that it anticipated seeking additional discovery later that week. *Id.*

On June 6, 2014, Topline filed its exceptions to the Report. ECF No. 175.[14] Therein, Topline asked the Court to, *inter alia*, "order the production of the documents and information listed in Point VI." *Id.* at 1.[15]

---

[13] In April 2014, SSI produced 611 training materials, but not supplemental information regarding sales, revenues, or expenses. ECF No. 178 at 14.

[14] On June 27, 2014, SSI responded to Topline's exceptions. ECF No. 173. On July 11, 2014, Topline replied. ECF No. 174.

[15] In Point VI, Topline seeks:

> 1. Copies of all invoices, order tickets, and packing lists for each of the transactions listed on the sales summaries that SSI produced in February 2011;

On July 11, 2014, Topline sent SSI its "Reiterated Discovery Requests," that is, documents "that are responsive to Topline's outstanding Rule 34 requests," including Topline's

---

2. Copies of all invoices bearing the codes BKG, OUT, MISC, SCCD, and SCCD-CD for transactions dated January 1, 2006 to the present;

3. Copies of all invoices for account nos. 2150 and 1560;

4. Copies of all contracts between SSI and each of its in-house clients, including those contracts reviewed but not produced by GSG;

5. Invoice data of the type and in the form contained in GSG's "sales & data analysis.xls" spreadsheet from September 4, 2012 to the present;

6. Copies in native format of all e-mails and attachments collected by Elizabeth Faust by which orders were sent to DocuPrint Imaging, Inc., including those e-mails and attachments reviewed by GSG;

7. Text searchable copies (with all metadata preserved) of all training materials listed on SSI's Stephen Gould print-job spreadsheets (2007-2010) that have not already been produced;

8. For the period on or after November 8, 2005, copies of all documentary and non-documentary (e.g., in audio, video, and PowerPoint format) instructional material created for or accessible on or through SandlerSpace, Sandler Online, all Team Rooms, the Broadcast Center, any portal to the foregoing sites, and David Mattson's private portal/website;

9. Access necessary to inspect and copy portals to Sandler Online and any client-specific Team Rooms (such as the Mass Mutual Team Room);

10. Access necessary to perform on-site searches of SSI's invoice database;

11. Accounting summaries of all revenues for all sales of Negotiation Program Materials in 2012 and 2013;

ECF No. 172 at 31.

Third Set of Document Requests.  ECF No. 175-1 at 1.  Topline

sought (1) CDA-related information (including the 11 categories

of information listed in Point VI of its exceptions to the

Report), (2) HTBCA-related information, and (3) customer

information.  *Id*. at 1, 3-6.  On August 7, 2014, SSI refused to

produce CDA information because discovery was closed and could

not be reopened without court approval.  ECF No. 175-2 at 1.

SSI refused to provide HTBCA information because Topline had

since November 2012 (when the discovery stay had been lifted) to

seek HTBCA discovery, and other than the January 2013 Third Set

of Document Requests, Topline had not sought additional

discovery.  *Id*. at 2.  On August 15, 2014, Topline sought

judicial assistance to resolve the dispute.  ECF No. 175 at 3.

On August 18, 2014, discovery was reassigned to Judge

Coulson.  On August 26, 2014, Judge Coulson held a telephone

conference with the parties about Topline's exceptions to the

Report and the pending discovery dispute.  ECF No. 177 at 1.[16]

On August 28, 2014, Judge Coulson denied Topline's requests

for CDA and HTBCA discovery.  *Id*. at 3.  As to the CDA, Judge

Coulson noted that Topline had participated in developing

Bondroff's "methodology as it was being formulated," and had the

Report since August 2013 and the documents used by Bondroff

---

[16] Judge Coulson found that a hearing on the record was
unnecessary.  ECF No. 177 at 1.

since February 2014.  *Id*.  Yet, "[a]t no point did Topline move to re-open discovery as to the CDA or otherwise formally seek such documents until" it filed its June 2014 exceptions to the Report.  *Id*.  Thus, Judge Coulson found that Topline "had ample opportunity to timely request additional documents related to the CDA, but failed to do so sufficiently in advance of the September 5, 2014 fact discovery deadline."  *Id.*[17]

Similarly, Judge Coulson held that Topline had not timely sought HTBCA discovery.  *Id*.  In addition to discovery completed before the September 2011 stay, the parties had almost two years since the stay had been lifted to pursue discovery.  *Id*. Topline had known about SSI's objections to its January 2013 Third Set of Document Requests since February 2013 (reaffirmed in December 2013), yet waited until August 2014--less than one month before the fact discovery deadline--to seek judicial assistance.  *Id*.

On September 15, 2014, Topline filed objections to Judge Coulson's Order.  ECF No. 178.  On September 26, 2014, SSI opposed the objections.  ECF No. 181.  On October 14, 2014, Topline replied.

---

[17] As an alternative basis for denying Topline's request, Judge Coulson noted that "the determination of the scope of discovery as to damages arising from SSI's breach of the CDA was explicitly delegated to [Bondroff]."  ECF No. 177 at 3.

On November 21, 2014, SSI moved to bifurcate (1) the issues of liability and damages as to the HTBCA, and (2) the CDA and HTBCA claims.  ECF No. 185.  SSI further moved for an extension of time to name rebuttal experts and provide expert reports.  *Id.*  On December 8, 2014, Topline opposed bifurcating liability and damages as to the HTBCA, but did not oppose bifurcating the CDA and HTBCA claims *provided* that trial on the HTBCA claims took place first.  ECF No. 189.  Topline opposed the time extension.  *Id.*  On December 29, 2014, SSI replied.  ECF No. 193.

II.  Analysis

    A.   Topline's Objections to Judge Coulson's Order

        1.   Timeliness

SSI contends that Topline failed to timely object to Judge Coulson's Order.  ECF No. 181 at 6-7.  Topline contends that its objections were timely.  ECF No. 182 at 4-6.

Under Rule 72(a), parties may object to a magistrate judge's order within 14 days of being served with a copy of the order.  Fed. R. Civ. P. 72(a).  However, Rule 6(d) provides for an additional three days when service is made "by electronic means" under Rule 5(b)(2)(E).  Fed. R. Civ. P. 6(d), 5(b)(2)(E).

Here, the parties agree that Judge Coulson's August 28, 2014 Order was served electronically.  *See* ECF Nos. 181 at 6;

182 at 5.  Thus, Topline had 17 days to file its objections.
Because the 17th day fell on a Sunday, however, Topline's
objections were due the next business day--Monday, September 15,
2014.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Topline filed its
objections that day; thus, they were timely.

### 2.   Legal Standard

Under the Magistrate Judges Act, 28 U.S.C. § 636, a
district judge may designate a magistrate judge to conduct
hearings (if necessary) and determine non-dispositive pretrial
matters.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a);
*see also* Local Rule 301.5(a) (D. Md. 2014).  A party aggrieved
by a magistrate judge's order may file written objections.  Fed.
R. Civ. P. 72(a).  The reviewing judge "must consider timely
objections and modify or set aside any part of the order that is
clearly erroneous or is contrary to law."  *Id.*

### 3.   The Merits

Topline objects to Judge Coulson's Order denying CDA and
HTBCA discovery.  Each will be discussed.

#### a.   CDA

Topline argues that it timely sought CDA discovery in June
2014[18] when it asked the Court to "order the production of the

---

[18] Topline also asserts that, in August 2013, it had timely
sought discovery from Bondroff.  ECF No. 178 at 19.  However, in
February 2014, Bondroff produced information to Topline.  *Id.* at

16

documents and information listed in Point VI" of its exceptions
to Bondroff's Report.  ECF Nos. 178 at 18-19; 172 at 1.[19]
Topline further argues that Judge Coulson incorrectly found that
the Court's delegation of determining the scope of discovery to
Bondroff was an alternative basis for denying Topline's request.
ECF No. 178 at 21-22.  SSI argues that Topline's June 2014
request to order document production was not a request to re-
open CDA discovery; and, even if it was, Topline had failed to
"include time for the Court to rule on the request such that the
ruling would allow SSI sufficient time to comply . . . before
the discovery deadline."  ECF No. 181 at 9.  SSI further argues
that Judge Coulson implicitly agreed with Bondroff about the
appropriate scope of discovery when he denied Topline's request
for additional CDA-related discovery.  *Id.* at 7.

---

13.  The issue here is whether Topline's *subsequent* requests for
CDA-related discovery were timely.

[19] Topline also argues that it had "diligent[ly] . . . push[ed]
to re-open CDA-related discovery" in its February 1, 2013
Memorandum to the Court before the March 12, 2013 hearing.  ECF
No. 178 at 18 (*citing* ECF No. 143 at 6).  Topline's February 1,
2013 Memorandum stated, *inter alia*, that it "has requested . . .
that, at a minimum, Mr. Bondroff ensure that SSI produce the
data needed to compute royalties" under the CDA.  ECF No. 143 at
6.  Topline's requests were "[b]ased on" Judge Legg's August 3,
2012 Order directing Bondroff to determine the discovery that
should be produced to Topline to calculate CDA damages.  *See
id.*; ECF No. 128 at 3.  The Court agrees with SSI that Topline's
February 1, 2013 Memorandum--filed six months before Bondroff
issued the Report--cannot reasonably be construed as a request
to re-open CDA discovery, but rather was a "request for
[Bondroff] to do [his] job."  ECF No. 181 at 3.

More than four years ago, Judge Legg correctly observed that discovery in this case had become "bogged down" over the parties' disagreements about SSI's obligation to produce information.  ECF No. 56.  The Court does not lightly impose further delay.  However, because the procedure established by Judge Legg required the Court--not Bondroff--to decide the scope of discovery after written submissions by the parties--which took the form of exceptions to the Report--the Court finds that Topline timely requested additional CDA discovery.

In May 2012, Judge Legg appointed Bondroff to "submit a report and testify at trial" about damages and royalties owed to Topline.  ECF No. 111 at 2.  However, in August 2012, Judge Legg clarified that Bondroff's reporting and trial testimony were secondary to his "first and primary role[, which was] to advise the Court as to the appropriate scope of discovery."  ECF No. 128 at 2.[20]  Judge Legg ordered that when "production is complete, [Bondroff] shall advise the Court and counsel."  *Id.* The parties will then "be given an opportunity to state, in writing, whether they [were] satisfied or dissatisfied with the production required by Mr. Bondroff.  The Court will hold a

---

[20] Indeed, Judge Legg anticipated that the parties would calculate damages based on Bondroff's discovery.  *See* ECF No. 128 at 3 ("The Court hopes that the parties will be able to calculate 'the numbers' themselves after Mr. Bondroff decides what information reasonably establishes those numbers.").

hearing and decide any disagreements." *Id.*[21] There is no evidence in the record that Bondroff advised the Court that production had been completed before he filed his report.[22] Thus, his Report triggered the parties' first opportunity to submit their views *to the Court* on the scope of discovery.[23]

---

[21] For this reason, the Court declines to rely on Judge Coulson's alternative basis for denying Topline's request. Judge Coulson stated:

> Moreover, it should be emphasized that the determination of the scope of discovery as to damages arising from SSI's breach of the CDA was explicitly delegated to GSG by this Court and that reason alone is a basis for denying Topline's request for additional documents related to the CDA, even if Topline's request was timely.

ECF No. 177 at 3. From this, it appears that Judge Coulson denied Topline's request solely because Judge Legg had appointed Bondroff to manage CDA discovery. Judge Legg had intended that Bondroff would streamline discovery; thus, Bondroff had discretion to accept or reject the parties' proposals during production. However, "the Court[,] rather than Mr. Bondroff[, would] ultimately decide any . . . disputes" about "the production required by Mr. Bondroff" *after* production had been completed. ECF No. 128 at 2. Without more, the Court cannot conclude--as SSI asserts that it should--that Judge Coulson made any findings about the substantive propriety of the information that Topline seeks.

[22] The Court recognizes that the parties were permitted to participate in--and have their accounting experts advise them on--the production process. However, under Judge Legg's August 3, 2012 Order, that participation and advice *preceded*--and, thus, did not substitute--the parties' ability to later challenge the scope of discovery required by Bondroff. *See* ECF No. 128 at 2.

[23] Although Bondroff's Report was responsive to Judge Legg's May 2012 appointment order, it would be unfair to deny Topline the opportunity to challenge Bondroff's discovery simply because an interim step that Judge Legg plainly intended for it to have did

Additionally, Topline did not unreasonably delay seeking additional CDA discovery. First, in August 2013, both parties contemplated that this Court would be required to resolve discovery disputes arising from Bondroff's Report. *See* ECF No. 154 at 1. That month, Topline began seeking discovery from Bondroff; after SSI objected, Topline served Bondroff with a subpoena *duces tecum*, and the parties requested a conference with the Court to resolve the dispute. ECF Nos. 155 at 1; 175 at 2. Recognizing that Topline would be unable to seek *additional* discovery until it learned what information Bondroff had relied on, the Court set deadlines for serving discovery requests on Bondroff. ECF No. 156. Because SSI moved for a protective order to limit the information Topline obtained from Bondroff, Topline did not receive that discovery until February 2014--after Judge Gauvey had ruled in its favor. ECF Nos. 165 at 6; 178 at 13.

Second, the April 3, 2014 amended joint proposed scheduling order did not direct Topline to submit its request to re-open CDA discovery--based on its review of Bondroff's voluminous discovery--before the *jointly agreed* June 6, 2014 exceptions deadline. *See* ECF No. 170 at 1. Thus, the Court cannot fault Topline for seeking to re-open CDA discovery when it filed its

---

not appear to have occurred before Bondroff submitted the Report.

exceptions.  Because Topline timely filed its exceptions, the Court finds that Topline timely sought to re-open CDA discovery.[24]  Accordingly, Topline's objection to Judge Coulson's August 28, 2014 Order as to the timeliness of its request for CDA discovery will be sustained; however, under Judge Legg's August 3, 2012 Order, a hearing is required on the substance of its request.

b.   HTBCA

Topline argues that it "deferred forcing a resolution of SSI's objections" to its Third Set of Document Requests as to the HTBCA until it had reviewed Bondroff's discovery[25] and SSI's April 2014 production of 611 manuals, and attempted to comply with Judge Legg's July 2011 Order that the parties meet and confer before filing discovery motions.  ECF No. 178 at 24-25.  SSI argues that Topline failed to timely object to its responses to the Third Set of Document Requests or inform SSI that it would not seek judicial resolution until after it reviewed

---

[24] The Court notes that Topline--for reasons that are unclear-- declined to wait for the Court's ruling on its request for additional CDA discovery when--on July 11, 2014--it requested CDA- and HTBCA-related information from SSI.  Generally speaking, however, as described above, Topline timely complied with the procedure established by Judge Legg and carried forward by this Court.

[25] Topline contends that Bondroff's CDA-related discovery "contained a voluminous amount of material incorporating [HTBCA] [c]ontent."  ECF No. 178 at 24.

Bondroff's discovery, and there was no "rigorous meet-and-confer process."   ECF No. 181 at 11.[26]

Fed. R. Civ. P. 34(b) provides that a party has 30 days to respond in writing to a request for documents.   Under Local Rule 104.8(a), the "party who has propounded . . . requests for production [and] is dissatisfied with the response to them" has 30 days from its receipt of the response to serve a motion to compel or seek judicial intervention.   *See* Local Rule 104.8(a) (D. Md. 2014); *see also* Discovery Guideline 1(f) of the Local Rules ("[c]ounsel may bring the unresolved dispute to the Court's attention by filing a letter, in lieu of a written motion"); *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 368 (D. Md. 2005).

Here, in February 2013 SSI timely responded to Topline's January 2013 Third Set of Document Requests.   *See* Pl. Ex.'s S, T.   Topline has not accounted for the nine month delay before-- in November 2013--it attempted to meet-and-confer about SSI's response.   There is no evidence that the parties were attempting to resolve their disagreements during that time, and Topline did not seek to extend the time it had to comply with Local Rule 104.8(a).   That time could not have been spent reviewing

---

[26] SSI has acknowledged its responsibility to supplement prior discovery responses "and will, if necessary, provide to Topline the required supplemental discovery in a timely manner."   ECF No. 181 at 12.

Bondroff's discovery or SSI's manuals because Topline did not receive that discovery until early 2014. *See* ECF No. 178 at 13. After receiving SSI's timely response to the November 2013 meet-and-confer letter, Topline waited another seven months before sending its Reiterated Discovery Requests, essentially seeking the same information as the Third Set of Document Requests but with more "particular and/or alternative descriptions." *See* ECF No. 182 at 9-11.  In light of Topline's repeated and lengthy delays following SSI's responses--which remained largely unchanged since February 2013--Judge Coulson correctly found that Topline had failed to timely seek judicial resolution.[27] Accordingly, Topline's objection to Judge Coulson's August 28, 2014 Order as to HTBCA discovery will be overruled.

B.    SSI's Motion to Bifurcate and for an Extension of Time

SSI moves to bifurcate the issues of liability and damages as to the HTBCA, and the issues of breach of the CDA and the HTBCA.  ECF No. 185 at 1.  Each will be discussed.

---

[27] Although Topline argues that SSI did not raise the fact that Topline had not sought judicial intervention when it agreed to the September 9, 2014 fact discovery deadline, ECF No. 178 at 25, under Local Rule 104.8(a), Topline--not SSI--had responsibility for raising concerns with SSI's responses. Although in May 2014 Topline indicated that it would seek *additional* HTBCA discovery, *see* ECF No. 178 at 15, there is no evidence that SSI understood that to mean that Topline would propound the same requests for information SSI had responded to 15 months earlier.

1.    Legal Standard

Under Fed. R. Civ. P. 42(b):

> For convenience, to avoid prejudice, or to expedite
> and economize, the court may order a separate trial of
> one or more separate issues, claims, crossclaims,
> counterclaims, or third-party claims. When ordering a
> separate trial, the court must preserve any federal
> right to a jury trial.

The decision to order separate trials is within the Court's

"sound discretion." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir.

1953).  Although "complex" issues have justified bifurcation,[28]

separating issues for trial "is not to be routinely ordered."[29]

Accordingly, "[t]he burden of proving that bifurcation is

warranted rests with the moving party." *Morgan v. Prince*

*George's Cnty.*, No. AW-09-1584, 2010 WL 64405, at *2 (D. Md.

Jan. 5, 2010).

2.    HTBCA Liability and Damages

a.    Judicial Economy

SSI contends that before the jury can determine *whether* it

breached the HTBCA, it must determine *what* constitutes a

---

[28] *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir.
1997) (bifurcating asbestos case because numerous causation
issues had to be resolved before legal theories and damages
could be addressed).

[29] Fed. R. Civ. P. 42(b) advisory committee's note.

breach;[30] thus, bifurcation would promote judicial economy
because it would prevent the unnecessary introduction of "an
exponential amount of evidence" on potential damages.   ECF Nos.
185-1 at 6-7; 193 at 3.[31]   Topline "strongly oppose[s]"
bifurcating liability and damages.   ECF No. 189 at 9.

Determining the full extent of damages is unnecessary in
any trial when the defendants prevail, but this "potential time
savings is true in all bifurcated cases" and does not, in
itself, justify bifurcation.   *R.E. Linder Steel Erection Co.,
Inc. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530,
1534 (D. Md. 1984).   Although bifurcation may save some time
during the liability phase of this trial, bifurcation is
inappropriate when the evidence on liability and damages
"overlap[s]."   7 Charles Alan Wright & Arthur R. Miller, *Federal
Practice and Procedure* § 2390 (3d ed. 2010).   Although SSI
asserts that "there would not be a significant overlap" in
evidence because damages evidence includes "lengthy, financial,
technical information" that is not relevant to liability, ECF

---

[30] In denying the parties' cross-motions for summary judgment,
Judge Legg noted three ambiguities that bear on whether SSI
breached the HTBCA, and, if so, how.   ECF No. 106 at 4.

[31] In support, SSI relies on *Cherdak v. Stride Rite Corp.*, 396 F.
Supp. 2d 602, 604 (D. Md. 2005) and *Air-Shields, Inc. v. Boc
Grp., Inc.*, No. CIV. A. WN-91-2571, 1992 WL 315230, at *1 (D.
Md. Feb. 28, 1992).   *See* ECF No. 185-1 at 7.   Both cases are
clearly distinguishable patent cases wherein the determination
of damages alone required proof of several factors independent
of liability.

No. 193 at 5, Topline has indicated that it will introduce evidence of the manner in which SSI allegedly breached the HTBCA (relevant to liability) to demonstrate the extent of its damages, ECF No. 189 at 13.[32]   Thus, "there is a high likelihood that two different juries would need to receive the same testimonial and documentary evidence."   *Id.*   Because SSI has not shown that damages evidence is largely independent of liability evidence,[33] and as bifurcation would prolong the already protracted proceedings in this case,[34] judicial economy disfavors bifurcation.[35]

b.   Prejudice

SSI contends that it will be prejudiced if it has to present evidence on "all potential levels of the alleged breach" because the jury may assume that SSI has admitted liability.

_____

[32] Topline asserts that calculating damages "may require a detailed explanation of the quantity and nature of the HTBCA Materials used in the various media through which SSI delivers training materials to its customers."   ECF No. 189 at 13.

[33] *See R.E. Linder,* 585 F. Supp. at 1534 (denying motion to bifurcate when the parties intended to call the same witnesses in the liability and damages proceedings); *Molinaro v. Watkins-Johnson CEI Div.,* 60 F.R.D. 410, 413 (D. Md. 1973) (bifurcation is inappropriate unless the issues are clearly separable and evidence will not overlap).

[34] Topline filed its complaint five and a half years ago.   *See* ECF No. 1 (complaint filed Nov. 19, 2009).   Since then, this case has frequently stalled because of discovery disputes.

[35] *See United States v. Marietta Mfg. Co.,* 53 F.R.D. 390, 400 (S.D.W. Va. 1971) (declining to bifurcate liability and damages in a contract case involving several complex issues).

ECF No. 185-1 at 6.  SSI further contends that it will be prejudiced "if it ha[s] to file additional and expanded expert reports based on" speculative breaches.  *Id.* at 7-8.  Topline contends that it will be prejudiced from further delaying resolution of this case.  ECF No. 189 at 13-15.  Topline also contends that it "has already spent a considerable amount of money to elicit an expert opinion on various theories of damages" and it would be unfair to "reward[]" SSI for failing to do the same.  ECF No. 189 at 14-15.[36]

Juries are capable of distinguishing between liability evidence and damages evidence, and appropriate jury instructions may address concerns about improper use of evidence.  *Hamm v. Am. Home Prods. Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995).[37]  "Indeed, the law presumes that juries will understand and follow instructions."  *Dotson v. Joseph*, No. CIV.A. 3:04CV10099, 2006 WL 2400479, at *1 (W.D. Va. Aug. 18, 2006)(*citing Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct.

---

[36] SSI asserts, however, that it has produced an expert report, which, like Topline's expert report, is based on "considerable speculation because neither expert had knowledge of the nature and extent of any breach."  ECF No. 193 at 5-6.

[37] *Cf. Dotson v. Joseph*, No. CIV.A. 3:04CV10099, 2006 WL 2400479, at *1 (W.D. Va. Aug. 18, 2006) ("[T]he potential for prejudice arising from different claims, for different injuries, entitling Plaintiff to different damages, may be cured by appropriate jury instructions."); *R.E. Linder*, 585 F. Supp. at 1534 ("[A]ny prejudice which defendants may encounter as a result of the punitive damages claims and claims for . . . injuries can be cured with instructions to the jury.").

1702, 95 L. Ed. 2d 176 (1987)).  The potential for prejudice from presenting damages evidence to the jury is not so high that separate trials are merited.  Moreover, SSI has not provided--nor has the Court found--authority for the proposition that the demands of trial preparation--although complex--amount to prejudice.  Accordingly, SSI's motion to bifurcate the issues of damages and liability as to the HTBCA will be denied.

### c.   Extension of Time

Relatedly, SSI seeks an extension of time to name additional rebuttal experts or provide additional rebuttal expert reports "until a reasonable time after the earlier of a finding" that it has breached the HTBCA or the denial of its motion to bifurcate HTBCA liability and damages.  ECF No. 185 at 2.  As described above, the Court will deny its motion to bifurcate.  SSI contends that an extension is merited because of the time and cost involved in developing an expert report and testimony "on all levels of possible damages."  ECF No. 185-1 at 10.  Topline contends that SSI has not shown that it diligently attempted to meet the expert rebuttal deadline.  ECF No. 189 at 16.

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("[A] court's scheduling order is not a

frivolous piece of paper, idly entered, which can be cavalierly
disregarded by counsel without peril.").  Good cause exists when
"the moving party has diligently made efforts to meet court
imposed deadlines," or when evidence came to light after the
deadline.  *See Tawwaab v. Virginia Linen Serv., Inc.*, 729 F.
Supp. 2d 757, 768-69 (D. Md. 2010) (citations omitted).

SSI has known since April 2012 that several damages
calculations may be required to prepare for trial on the HTBCA
claims.[38]  Despite that knowledge, SSI waited until the (most
recent) expert rebuttal deadline to move to bifurcate liability
and damages, or alternatively, for an unspecified extension of
time to prepare additional expert rebuttals as to damages.  *See*
ECF Nos. 184 (setting Nov. 21, 2014 as the deadline to serve
Rule 26(a)(2) rebuttal disclosures); 185 (SSI's motion to
bifurcate and for an extension of time filed Nov. 21, 2014).
Although--as SSI asserts--no trial date has been set, that is
largely because of this type of "dragging" that SSI charges
Topline with.[39]  More importantly, however, the lack of a trial
date does not excuse SSI's apparent lack of diligence.  SSI has

[38] *See* ECF No. 106 (Judge Legg's April 30, 2012 Order denying the
parties' cross-motions for summary judgement as to the HTBCA).

[39] *See* ECF No. 181 at 5 (opposing Topline's request for
additional HTBCA discovery for lack of timeliness: "These
additional requests were not properly served on SSI per Rule 34.
It is this very kind of dragging by Topline that has caused the
litigation to be pending for nearly 5 years without a trial date
set.").

not shown that it attempted to meet the deadline; rather, it seeks to be excused from doing so.  SSI's motion for an extension of time will be denied.

       3.   CDA and HTBCA

SSI argues that bifurcation is merited because claims related to the CDA and HTBCA "are committed to different fact-finders."  ECF No. 185-1 at 9.  SSI further contends that it will be prejudiced if the jury hears that it has breached the CDA and may impermissibly conclude that it has also breached the HTBCA.  *Id.* at 9-10.  Topline is not opposed to separate trials on the CDA and HTBCA claims "provided that the [HTBCA] claims are tried first" to preserve its right to a jury trial on issues that are common to both contracts.  ECF No. 189 at 9 (noting "that there may be evidence in support of Topline's [HTBCA] claims that could be relevant to a determination of damages under the CDA").  SSI--in reply--argues that if "there is a connection between the [HTBCA] claims and the CDA claims, . . . the jury waiver provision in the CDA would apply to any [HTBCA] claims that are relevant to the CDA claims"; thus Topline has waived its right to a jury trial on HTBCA claims.  ECF No. 193 at 3.

Bifurcation under "Rule 42(b) may not be used in a way that defeats any right of one or both of the parties to a jury trial on a particular issue."  7 Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 2391 (3d ed. 2010).
Here, however, the parties have waived the right to trial by
jury in "*any action . . . connected in any way* with [the CDA]."
ECF No. 1-1 at 20 (CDA § 17(c))(emphasis added).  Because SSI's
reply has raised the possibility that Topline--by its assertion
that there may be issues "common" to the HTBCA and CDA--has
waived its right to a jury trial on *all* claims, potentially
obviating the need for bifurcation, additional briefing is
required.  Moreover, neither party has addressed the impact of
bifurcation on the fraud count, which implicates both contracts.
*See* ECF No. 1 at 18-20.[40]  Accordingly, the Court will defer
ruling on SSI's motion to bifurcate the CDA and HTBCA claims
until the parties have had an opportunity to brief (1) whether
the presence of CDA-related issues in Topline's action for
breach of the HTBCA triggers the CDA's jury waiver provision,
and (2) the impact of bifurcation on the fraud count.

---

[40] Topline seeks punitive damages in connection with the fraud
count and "a trial by jury as to all issues raised by each of
their respective claims asserted herein and triable as of right
by a jury."  ECF No. 1 at 22-23.  However, as the CDA bars trial
by jury in actions connected to the CDA and punitive damages in
"any action . . . related to" the CDA, ECF No. 1-1 at 20 (CDA §
17(c)-(d)), it is unclear whether bifurcation would result in
the fraud count being tried before different fact-finders with
different potential damages.

III. Conclusion

For the reasons stated above, Topline's Objections to Judge Coulson's August 28, 2014 Order will be sustained in part and overruled in part, SSI's motion to bifurcate HTBCA liability and damages and for an extension of time will be denied, and the Court will defer ruling on bifurcating the CDA and HTBCA claims pending additional briefing.[41]

_____7/14/15_____

Date

_____

William D. Quarles, Jr.
United States District Judge

---

[41] In light of the unresolved issues, the current Scheduling Order will remain suspended.  Following the Court's decision on bifurcating the CDA and HTBCA claims, the Court will permit the parties to propose new deadlines.